1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

UNITED STATES OF AMERICA,

CASE NO. 13CR2113-WQH

11

Plaintiff,

ORDER

vs.

12

EDEN ALICANEDO
AGUILASOCHO (5),

13
14

Defendant.

HAYES, Judge:

15
16

        The matters before the Court are: 1) the motion to suppress evidence (ECF No.

17

113) and 2) the motion to suppress post-arrest statements (ECF No. 139) filed by

Defendant Eden Alicanedo Aguilasocho.

18

**BACKGROUND FACTS[1]**

19
20

        Defendant Eden Alicanedo Aguilasocho is charged with eight other co-

21

defendants with conspiracy to distribute methamphetamine and heroin in violation of

21 U.S.C. §§ 841(a)(1) and 846.

22
23

        In November of 2012, the agents of the Federal Bureau of Investigations (FBI)

24

were investigating the drug trafficking activities of a Mexican based drug trafficking

organization allegedly led by Jesus Alberto Robles Martinez.  During the course of the

25

investigation, the FBI applied for and received an order to intercept communications

26

over a cellular phone used by Baez Orozco.  Based on intercepts of Orozco and other

27
28

────────────────

        [1] The Court held an evidentiary hearing on July 29, 2014.

members of the drug trafficking organization, agents became aware that Orozco and others were coordinating the distribution of controlled substances to co-conspirators traveling from the State of Washington.

On December 13, 2012, agents intercepted a number of calls on Orozco's line with co-defendant Julio Cesar Corrales Ochoa which led agents to believe that the participants in the phone call were negotiating the terms of a drug deal and that the drugs were being transferred by car in Santa Ana, California.  In an effort to locate the transfer, agents initiated surveillance in Santa Ana.  Using an electronic tracking device on Ochoa's cellular phone, agents located and identified a vehicle believed to be the load vehicle, as a green 2005 Chevrolet Malibu.  Based upon phone intercepts, agents believed that the Chevrolet Malibu had traveled from the State of Washington for the purpose of retrieving and transporting controlled substances.  The vehicle stayed in Santa Ana and state law enforcement monitored the vehicle.

On December 20, 2012, federal agents were notified that the Chevrolet Malibu was traveling northbound on California State Route 99.  Federal agents contacted the California Highway Patrol for assistance in the surveillance of the Chevrolet Malibu. Federal agents informed the California Highway Patrol that the Chevrolet Malibu was likely transporting drugs.  Federal agents informed California Highway Patrol that they would like the vehicle stopped if California Highway Patrol had independent probable cause to stop the vehicle.  California Highway Patrol Officer Paxson spotted the vehicle and followed it for a short period.  At approximately 7:50 a.m., based upon an observed vehicle code violation (CV21703)[2] for following too closely, the patrol officer conducted a traffic enforcement stop.  The patrol officer testified that he observed the vehicle traveling at 60 miles an hour; that the required distance for following a vehicle at sixty miles an hour was approximately 303 feet; and that the vehicle was following

---

[2] California Vehicle Code, Section 21703, states: "The driver of a motor vehicle shall not follow another vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon, and the condition of, the roadway."

13CR2113-WQH

1    the car in front of it at a distance of approximately 15 feet.

2          Defendant Aguilasocho was driving the 2005 Chevrolet Malibu.  Co-defendant

3    Baez Rivera was the right front passenger.  Co-defendant Ochoa was a rear seat

4    passenger.  Defendant Aguilasocho immediately exited the vehicle with his Mexican

5    identification card or international driver's license, the vehicle registration, and proof

6    of insurance in his hand.  The patrol officer asked Defendant Aguilasocho some routine

7    questions in Spanish, including, where are you coming from? and where do you live?

8    Defendant told the patrol officer that he had been in the United States for two days but

9    produced a border crossing permit which indicated that he crossed from Mexico into

10   the United States five days prior to the stop.

11         The patrol officer decided not to issue a traffic citation to the Defendant and to

12   issue a verbal warning about following too closely when driving a vehicle.  As

13   Defendant turned to walk away, the patrol officer asked if he could ask Defendant a

14   question.  Defendant turned back toward the patrol officer and responded in the

15   affirmative.  The patrol officer asked Defendant if he had firearms,  money, or drugs in

16   the vehicle.  Defendant answered no.   The patrol officer asked the Defendant if he

17   would consent to a search of the vehicle.  Defendant consented.  The patrol officer

18   received oral and written consent from all occupants of the vehicle prior to the search.

19   After searching, the officers located methamphetamine and heroin located in the trunk

20   hidden within a pair of shoes and in the sidewalls of the trunk.

21         Defendant was arrested at the scene and booked into the Fresno jail.  At the

22   Fresno jail, Defendant was interviewed by a task force agent with the Fresno police

23   department.  Prior to the interview, Defendant was informed of his *Miranda* rights in

24   the Spanish language, and indicated that he understood his rights.  Defendant was asked

25   and answered questions in the Spanish language.  Defendant was cited and released by

26   jail officials without input from federal authorities.

27         On January 4, 2014, Defendant Aguilasocho was arrested as he attempted to enter

28   the United States at the Otay Mesa Port of Entry.  Defendant gave a second post-

1    Miranda interview.

2                           **RULING OF THE COURT**

3    1)  Motion to Suppress Evidence (ECF No. 113)

4            Defendant contends that patrol officer did not have an objective basis to stop his

5    vehicle.  Even if the alleged traffic stop was justified, Defendant asserts that the

6    detention was impermissibly extended before the officer searched the vehicle for

7    contraband and located the drugs.  Defendant contends that officers "allegedly"

8    obtained consent to search the vehicle.  (ECF No. 113-1 at 2.)

9            The Government asserts that patrol officer observed the Defendant driving too

10   closely to a vehicle in violation of the California vehicle code.  The Government asserts

11   that the officer had an independent basis for initiating the traffic stop and that the

12   subjective motivations of the patrol officers (i.e. the drug investigation)are not relevant

13   to the legality of the stop.  The Government contends that the length of the stop was

14   reasonable and that the search was conducted pursuant to valid written consent from all

15   of the individuals in the vehicle.

16           "The Fourth Amendment guarantees 'the [r]ight of the people to be secure in their

17   persons, houses, papers, and effects, against unreasonable searches and seizures.'

18   Temporary detention of individuals during the stop of an automobile by the police, even

19   if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons'

20   within the meaning of this provision.  An automobile stop is subject to the constitutional

21   imperative that it not be 'unreasonable' under the circumstances.  As a general matter,

22   the decision to stop an automobile is reasonable where the police have probable cause

23   to believe that a traffic violation has occurred."  *Whren v. United States,* 517 U.S. 806,

24   809-810 (1996)(citations omitted).

25           A traffic violation alone is sufficient to establish reasonable suspicion to justify

26   a stop, regardless of whether the violation was pretextual.  *See id*. at 811-812; *United*

27   *States v. Choudhry*, 461 F.3d 1097, 1102 (9th Cir. 2006).   "[A] police officer may

28   conduct an investigatory traffic stop if the officer has 'reasonable suspicion' that a

1  particular person 'has committed, is committing, or is about to commit a crime.'" *Id.* at

2  1100 quoting *United States v. Lopez-Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000).

3  Officers have reasonable suspicion when "specific, articulable facts ... together with

4  objective and reasonable inferences, form the basis for suspecting that the particular

5  person detained is engaged in criminal activity." *Id.* at 1105 (internal quotations marks

6  omitted).

7       In this case, the patrol officer testified that he observed the vehicle traveling at

8  sixty miles an hour, that the required distance for following a vehicle at sixty miles an

9  hour was approximately 303 feet, and that the vehicle was following the car in front of

10 it at a distance of approximately fifteen feet.  The patrol officer testified that he was

11 informed that federal agents suspected that the vehicle contained drugs but that he

12 needed his own independent probable cause to justify the stop.  The evidence in the

13 record clearly shows that the patrol officer had specific, articulable facts, together with

14 objective and reasonable inferences to form the basis for suspecting that the Defendant

15 had committed a traffic violation and reasonable suspicion to stop the vehicle.

16      "[A] lawful seizure can become unlawful if it is prolonged beyond the time

17 reasonably required to complete that mission...." *Muehler v. Mena*, 544 U.S. 93, 101

18 (2005) (internal citation omitted).  In this case, the patrol officer asked the Defendant

19 at the conclusion of the traffic stop if he would consent to a search of his vehicle.

20 Defendant and all passengers gave oral and written consent and the vehicle was

21 searched.  The length of the stop was reasonable and the stop was not unreasonably

22 prolonged.  There are no facts which would constitute a violation of the Fourth

23 Amendment.

24      "An individual may waive his Fourth Amendment rights by giving voluntary and

25 intelligent consent to a warrantless search of his person, property, or premises." *United*

26 *States v. Torres-Sanchez*, 83 F.3d 1123, 1129 (9th Cir. 1996).  Consent to search is

27 valid if voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248 (1973).

28      In this case, the patrol officer testified that he received oral and written consent

1    from the Defendant and all of the passengers in the car prior to the search.  The written

2    consent form was received into evidence.  There is no evidence to the contrary or any

3    facts suggested to show that the consents were not valid.

4         Defendant's motion to suppress evidence is denied.

5    2) the Motion to Suppress Defendant's Post-arrest statements (ECF No. 139)

6         In this case, the record establishes that Defendant made statements on three

7    occasions: 1) at the initial stop; 2) after his arrest on December 20, 2012 in Fresno; and

8    3) after his re-arrest on January 4, 2014 making application for entry into the United

9    States at the Otay Mesa Port of Entry.  Defendant contends that his statements do not

10   constitute a confession but that the Government intends to assert that inconsistencies

11   in the statements may be used to infer guilt.  Defendant requests that the Court evaluate

12   the "legality or voluntariness" of the statements.  (ECF No. 139-1 at 2).  Defendant

13   further contends that the statements he made on December 20, 2012 must be suppressed

14   on the on the grounds that there was a violation of the six hour rule in 18 U.S.C. §3501.

15        The Government asserts that the statement at the initial stop were made pursuant

16   to a valid traffic stop, that the second statement was made within six hours of his

17   observed traffic violation and after *valid Miranda* advisal, and that the third statement

18   was made upon his rearrest and after valid *Miranda* advisal.

19        "For inculpatory statements made by a defendant during custodial interrogation

20   to be admissible in evidence, the defendant's waiver of Miranda rights must be

21   voluntary, knowing, and intelligent." *United States v. Garibay,* 143 F.3d 534, 536 (9th

22   Cir. 998)(internal quotation omitted).  "Only if the totality of the circumstances

23   surrounding the interrogation reveal both an uncoerced choice and the requisite level

24   of comprehension may a court properly conclude that the *Miranda* rights have been

25   waived." *Moran v. Burdine*, 475 U.S. 412, 421 (1986)(internal quotation omitted).  "In

26   evaluating voluntariness, the test is whether, considering the totality of the

27   circumstances, the government obtained the statement by physical or psychological

28   coercion or by improper inducement so that the suspect's will was overborne." *United*

1  *States v. Male Juvenile*, 280 F.3d 1008, 1022 (9th Cir.2002)(internal quotations
2  omitted).

3      There are no facts in this case to suggest that the statements made by the
4  Defendant at the stop were custodial or coerced.  The agent who interviewed the
5  Defendant at the local highway patrol office on December 20, 2012 testified that the
6  interview started at approximately 11:15 a.m.,[3] that the entire interview was conducted
7  in the Spanish language, and that the tone of the entire interview was conversational.
8  The agent testified that he informed Defendant of his *Miranda* rights using a card, that
9  Defendant indicated that he understood his rights, and that the Defendant agreed to
10  answer and  answered his questions.   The Government carried its burden to show that
11  Defendant's *Miranda* waiver was voluntary, knowing, and intelligent.  There are no
12  facts to suggest that Defendant's will was overborne by intimidation, coercion, or
13  deception. There are no facts suggested by the Defendant which would indicate any
14  violation of Defendant's  constitutional or statutory rights.

15      The agent who interviewed Defendant on January 4, 2014 testified that he is a
16  native Spanish speaker, that he conducted the interview in the Spanish language, and
17  that the interview was conversational.  The agent testified that he informed Defendant
18  of his *Miranda* rights using an advisal form, that Defendant wrote the letter E next to
19  each advisal, and that Defendant agreed to speak with him.  The Government carried
20  its burden to show that the waiver of *Miranda* was voluntary, knowing, and intelligent.
21  There are no facts suggested by the Defendant which would indicate any violation of
22  Defendant's  constitutional rights or that the statement was not voluntary.

23
24
25
26
27
28

[3] The traffic stop took place at approximately 7:50 a.m.

IT IS HEREBY ORDERED that 1) the Defendant's Motion to Suppress Evidence (ECF No. 113) is denied and 2) the Defendant's Motion to Suppress post-arrest statements (ECF No. 139) is denied.

DATED:  August 26, 2014

**WILLIAM Q. HAYES**
United States District Judge

- 8 -